In re: **William VASU and Linda M. Vasu, Debtors.**

**Richard M. Coan, Trustee, for William Vasu and Linda M. Vasu, Plaintiff,**

v.

**Tremont Advisors, Inc. and Tremont Securities, Inc., Defendants.**

**No. 3:98 CV 1705 SRU.**

United States District Court, D. Connecticut.

Jan. 9, 2001.

Stacey Moody McHenry, James A. Lenes, Neubert, Pepe & Monteith, New Haven, CT, for Plaintiff.

Judy A. Rabkin, Robert Laplaca, Levett Rockwood, PC, Westport, CT, for Defendants.

## *RULING ON MOTION TO DISMISS*

UNDERHILL, District Judge.

William Vasu[1] brought various New York common law claims against his former employer, Tremont Advisors, Inc., ("Tremont"),[2] for terminating him without cause before his alleged two-year employment contract had expired. Tremont has moved to dismiss and Vasu has objected. For the foregoing reasons, Tremont's motion to dismiss (Doc. # 25) is granted in part and denied in part.

## I. FACTS

The court accepts the facts alleged in the complaint as true for the purposes of the present motion. In May 1997, Tremont hired Vasu as a managing director of Tremont's offshore insurance subsidiary. Complaint ("Compl.") dated May 12, 1998 at ¶¶ 7, 9. Tremont set forth the terms and conditions of Vasu's employment in a letter dated May 16, 1997 ("Letter"). *See* Letter attached to Compl.; Compl. ¶¶ 9–16. On June 1, 1997, Vasu began working for Tremont. *Id.* at. ¶ 10. In addition to the Letter, Tremont made representations and assurances and provided instructions, directions, and supervision to Vasu, promising to employ Vasu on the same terms as did the Letter. *Id.* at ¶ 22–24.

On September 30, 1997, Tremont fired Vasu with no explanation and without cause, after the expiration of any applicable probationary period and before the expiration of the two-year term of employment in the Letter. *Id.* at. ¶¶ 18, 32. Tremont did not pay Vasu the wages that were due him under the Letter. *Id.* at ¶ 40. Tremont terminated Vasu knowing it would interfere with Vasu's ability to "realize the financial benefits of the contacts he had made with potential Investors" and for the purpose of avoiding paying Vasu an "Incentive Bonus, the Equity Interest and other compensation." *Id.* at ¶¶ 48, 53.

On November 7, 1997, Vasu and his wife filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *Id.* at ¶ 4. Richard M. Coan was appointed Trustee for Vasu. *Id.* at ¶ 5.

On May 12, 1998, Coan, as Trustee, sued Tremont in Bankruptcy Court for claims arising out of Vasu's pre-petition employment with Tremont. The complaint alleged breach of express and im-

---

1. Although Richard Coan, trustee for the bankruptcy estate of William Vasu and Linda Vasu, is technically the plaintiff, the court will refer to William Vasu ("Vasu") as the plaintiff because it is Vasu's employment contract and claims that are at issue.

2. Tremont Securities, Inc., a subsidiary of Tremont, is also a named defendant, but the court will refer to Tremont as the defendant because Vasu's claims arise out of his employment by Tremont.

plied contract, promissory estoppel, unjust enrichment, violation of good faith and fair dealing, interference with financial benefits under prima facie tort, violation of New York Labor Law §§ 190, *et seq.*, and defamation.

On August 20, 1998, the District Court granted Tremont's motion to withdraw the reference. On September 22, 1999, the District Court granted Tremont's motion to stay the case pending arbitration with respect to the defamation claim in Count IX. On October 18, 1999, Tremont moved to dismiss the remaining eight counts. On December 12, 1999, the plaintiff objected to Tremont's motion to dismiss.

## II. DISCUSSION

### A. Standard of Review for a Motion to Dismiss

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must construe any well pleaded factual allegations in the plaintiff's favor. *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Boyd v. Nationwide Mut. Insurance Co.*, 208 F.3d 406, 409 (2d Cir.2000). In addition, the court must draw all reasonable inferences in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Kittay v. Kornstein*, 230 F.3d 531, 537–38 (2d Cir. 2000). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683).

Under Rule 12(b)(6), a court may dismiss a claim for either "(1) the lack of a cognizable legal theory; or (2) the absence of factual assertions to support a claim." *Titan Sports, Inc. v. Hellwig*, 1999 WL 301695 at *5 (D.Conn.1999) (citations omitted). "To withstand a motion to dismiss, a complaint must allege facts setting forth all of the essential elements of a viable legal theory . . . ." *Id.* at *12. Bald assertions and conclusions of law unsupported by factual allegations will not defeat a motion to dismiss, despite the liberal pleading standard. *Id.; DeJesus v. Sears*, 87 F.3d 65, 70 (2d Cir.1996); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996). In deciding such a motion, a district court must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

### B. Analysis

This court has jurisdiction pursuant to 28 U.S.C. § 1334. The parties agree that New York law applies. *See* Plaintiff's Brief dated Dec. 2, 1999 ("Pl.Brief") at 3; Defendant's Brief dated Oct. 18, 1999 ("Def.Brief") at 4–6; *Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir.), *cert. denied*, 505 U.S. 1204, 112 S.Ct. 2990, 120 L.Ed.2d 868 (1992); *In re Bidermann Industries USA, Inc.*, 241 B.R. 76, 82 (S.D.N.Y.1999).

The gravamen of Vasu's claim is that Tremont, his former employer, wrongfully discharged him without cause: (1) to deny Vasu compensation that was due or soon to be due; and (2) before Vasu's two-year term of employment had expired.

Vasu's complaint does not specifically identify the legal theories underlying each of his claims. Accordingly, Tremont and Vasu have characterized the claims under different legal theories in their respective memoranda. The court will, therefore, address each of Vasu's claims under the legal theory apparently set forth by the pleading and, where appropriate, will address other possible bases for relief.

### 1. *Counts I, II & III.*

Vasu's first three counts allege breach of an express and implied employment contract. The alleged contract was created' by a writing and oral representations, assurances, instructions, directions and supervision provided by Tremont. Vasu argues either that the writing by itself or the representations, assurances, instructions, directions and supervision along with the writing constitute a contract for a two-year term of employment. Vasu contends that "the first three claims for relief state that Tremont made a promise to Vasu, either express or implied, that the employment would continue for a period of time capable of being determined (two years)." Pl. Brief at 6. Tremont allegedly breached that contract by terminating Vasu without cause for improper reasons only four months into the two-year term. Pl. Brief at 5.

Tremont argues that Vasu is an "at-will employee," whom Tremont was free to terminate at any time. Tremont asserts that there was no term of duration in the writing nor an express limitation in the writing that rebuts the presumption that Vasu was "at will." Def. Reply Brief at 4. The court agrees that Vasu is an at-will employee.

■ It is well settled that under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Rooney v. Tyson*, 91 N.Y.2d 685, 689, 674 N.Y.S.2d 616, 697 N.E.2d 571 (1998) (citations omitted) (most recent exposition from the New York Court of Appeals on New York's "at-will" employment doctrine and what constitutes a definite term of employment); *see also Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 334, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987) ("an employer has the right to terminate an at-will employee at any time for any reason or for no reason, except where the language has been limited by express agreement"); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (under New York law, "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right to terminate an employment remains unimpaired."); *see also Rooney v. Tyson*, 127 F.3d 295, 297 (2d Cir.1997) ("the resoluteness with which the New York Court of Appeals has reaffirmed the 'at-will' doctrine indicates that exceptions to the rule are discouraged").

■ The New York Court of Appeals has "consistently reaffirmed the threshold determination that a definite employment duration does not implicate the at-will presumption." *Rooney*, 91 N.Y.2d at 690, 674 N.Y.S.2d 616, 697 N.E.2d 571 (citations omitted); *see also Jones v. Dunkirk Radiator Corp.*, 21 F.3d 18, 22 (2d Cir.1994) ("A promise of employment for a period of time that is 'either definite or capable of being determined' trumps the at-will presumption.") *Id.* (quoting *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 465, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982)). The employment-at-will rule, therefore, applies when employment is of indefinite duration, and the rule provides "no more than a rebuttable presumption." *Jones*, 21 F.3d at 22 (citing *Weiner*, 57 N.Y.2d at 466, 457 N.Y.S.2d 193, 443 N.E.2d 441). This presumption "may be triggered when an employment agreement fails to state 'a definite period of employment,' 'fix [ ] employment of a definite duration,' 'establish a fixed duration,' or is otherwise 'indefinite.'" *Rooney*, 91 N.Y.2d at 689, 674 N.Y.S.2d 616, 697 N.E.2d 571 (citations omitted) ("our ample precedents have not categorically delineated what may differentiate a 'definite,' 'indefinite,' or 'fixed' employment term or duration utilized in various contractual formulations." *Id.* at 690, 674 N.Y.S.2d 616, 697 N.E.2d 571.).

■ The at-will presumption may be rebutted with proof that the unfettered right to terminate the employment has been limited by express or implied agree-

ment. *Rooney,* 91 N.Y.2d at 692, 674 N.Y.S.2d 616, 697 N.E.2d 571 (citing *Weiner,* 57 N.Y.2d at 465, 457 N.Y.S.2d 193, 443 N.E.2d 441); *see also Wright v. Cayan,* 817 F.2d 999, 1003 (2d Cir.1987) (even if contract is indefinite, an express limitation, such as an employer's right to terminate an employee of indefinite duration found in employer's handbook as in *Weiner,* would be given effect). This is a very narrow exception to the employment-at-will doctrine. *See, e.g., Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 540 (N.D.N.Y. 1995) (referring to *Weiner* as "an extremely limited exception to the general rule that no cause of action exists for termination of an at-will employee"). In determining whether "such a presumption is overcome ..., the trier of facts will have to consider the totality of the circumstances, including the writings, the situation, the course of conduct of both parties and their objectives." *Jones,* 21 F.3d at 22 (citing *Weiner,* 57 N.Y.2d at 465, 457 N.Y.S.2d 193, 443 N.E.2d 441 ). The burden of establishing an express or implied limitation is heavy. *Rooney,* 91 N.Y.2d at 701, 674 N.Y.S.2d 616, 697 N.E.2d 571 (dissenting opinion).

 In light of New York law, the first question is whether there is definite term of duration in Vasu's alleged employment agreement. Vasu argues that the Letter is the employment contract and a term of duration is "capable of being determined" from its language.[3] Pl. Brief at 6. Vasu contends that the Letter contains a consistent reference to a two-year time period, and therefore argues that he entered into a two-year employment contract with Tremont. *See* Pl. Brief at 6–7. Vasu relies upon two of seven bulleted terms allegedly proposed by Tremont to Vasu in the Letter to support his argument. Those provisions state:

• Options on 20,000 shares of Tremont Advisors, Inc., granted to [Vasu] on the

first day of employment vesting 33.33% initially, 33.33% on the one year anniversary of your employment and 33.33% on the *second* year of your employment. The price of these options shall be 3.75 and the expiration of these options should be *June 1, 2002.*

• A 2% equity interest in the joint venture, vesting 1% on the first anniversary and 1% on the *second* anniversary of your employment.

Letter (emphasis added by Vasu). There are no other temporal references in the Letter.

Even assuming the Letter was an employment contract, this language, without more, as a matter of law does not establish an ascertainable duration of employment. *See Martin v. New York Life Ins. Co.,* 148 N.Y. 117, 119–21, 42 N.E. 416 (1895) (yearly employment for a specified annual salary was indefinite); *see also Rooney,* 127 F.3d at 297 (citing cases for general rule that no express limitation for general terms of duration with the narrow exception where the term of duration is specified with reference to one party's engagement in a profession); *Rooney,* 91 N.Y.2d at 691–92, 674 N.Y.S.2d 616, 697 N.E.2d 571 (citing and summarizing cases that have found no express limitations).

The two-year references in the Letter are limited to creating a schedule for the timing of the vesting of options of shares and equity interests. Nothing in the Letter or in the factual allegations of Vasu's complaint indicates the two-year references are connected in any way to the duration of Vasu's employment. The Letter, by itself, has no definite term of duration of Vasu's employment nor one that is capable of being determined from its language and, therefore, the Letter does not limit Tremont's unfettered right to discharge Vasu.

---

**3.** The Letter does not expressly state a duration of employment, and Vasu does not seem to argue that it does.

Vasu's allegations are also insufficient to support an oral contract for a definite duration of employment. Construed in the light most favorable to Vasu, the conclusory allegations that Tremont made representations, assurances, and provided instructions, directions and supervision to Vasu in the performance of his duties cannot be read to allege that Tremont made an oral agreement that Tremont would employ Vasu for a period of two years.[4] Compl. at ¶ 22, 23, 24; *Wanamaker*, 907 F.Supp. at 538 (citing cases for proposition that oral assurances regarding job security or oral assurances that an employee would be fired only for cause, without more, are insufficient to overcome the at-will presumption). Thus, even assuming the Letter or the alleged representations, separately or in combination, constitute an employment contract, any such contract is of indefinite duration and the rebuttable at-will presumption is triggered.

Vasu bases his first three claims on the fact that the two-year duration is capable of being determined by the Letter. Pl. Brief at 7. That argument was foreclosed above. Although Vasu does not appear to argue specifically that there is any express or implied limitation beyond that, the court will consider whether Tremont's right to terminate Vasu is limited by an express or implied agreement.

Even if an employment contract is of indefinite duration, "an express or implied limitation on an employer's right to discharge may · still became operative." *Rooney*, 91 N.Y.2d at 692, 674 N.Y.S.2d 616, 697 N.E.2d 571 (citing *Weiner*, 57 N.Y.2d at 465, 457 N.Y.S.2d 193, 443 N.E.2d 441); *Wright*, 817 F.2d at 1003 (even if contract is indefinite, an express limitation, such as an employer's right to terminate an employee of indefinite duration only for cause found in employer's handbook, would be given effect).

Although Vasu cites to *Weiner*, Pl. Brief at 4, Vasu does not allege facts that satisfy the explicit requirements of the *Weiner* exception. *Weiner*, 57 N.Y.2d at 465–66, 457 N.Y.S.2d 193, 443 N.E.2d 441 (plaintiff alleged specifically that: (1) there was a promise offered to induce plaintiff to leave former employ; (2) the promise was incorporated into employment application; (3) the plaintiff rejected other offers of employment; and (4) the employer told plaintiff on several occasions that he should proceed in strict compliance with handbook and policy manuals because employees could only be discharged for cause); *see also Gmora v. State Farm Mutual Automobile Insurance ·Co.*, 709 F.Supp.

---

4. Oral agreements that do not clearly specify a definite duration are also presumptively at-will. *Rooney*, 91 N.Y.2d at 696, n. 1, 674 N.Y.S.2d 616, 697 N.E.2d 571(dissenting opinion) (citing cases). In *Rooney*, however, the Court added some flexibility to this longstanding proposition. In *Rooney*, there was no written contract and the parties conceded that the employer-boxer made a oral contract with the employee-trainer that the employee could train the boxer "for as long as the boxer fights professionally." *Id.* at 693, 674 N.Y.S.2d 616, 697 N.E.2d 571. The Court concluded that the oral promise was of definite duration. The Court stated that although not "precisely calculable," the boundaries of the beginning and end of the employment period were sufficiently ascertainable where the period ends at *expiration of the employer's career. Id.* at 692, 674 N.Y.S.2d 616, 697 N.E.2d 571 (emphasis added). Moreover, the Court held that the durational term was understandable to both parties, reasonably determinable by fact-finders and that the trainer's compensation, for which he gave consideration of many years of working without payment, "was expressly linked to a percentage of the boxer's earnings within the professional career measuring rod." *Id.* The Court further explained its holding and emphasized that "[w]e do not at all abandon the tradition that has wisely guided the careful progression of the at-will doctrine and its application in particular circumstances." *Id.* at 694, 674 N.Y.S.2d 616, 697 N.E.2d 571. Rooney, however, is inapposite because Vasu does not allege Tremont made an oral promise for a definite duration of employment. Even if he had, it would most likely be unenforceable under the statute of frauds. *See Cunnison v. Richardson Greenshields Securities, Inc.*, 107 A.D.2d 50, 485 N.Y.S.2d 272, 274–75 (1985).

337, 340–41 (E.D.N.Y.1989) (court discussed difficult pleading burden under *Weiner* ); *Sabetay,* 69 N.Y.2d 329, 514 N.Y.S.2d at 212, 506 N.E.2d 919 (Court characterized *Weiner* as imposing an "explicit and difficult pleading burden").

In addition to the absence of any allegation that there was a promise of a two-year term of employment expressly limiting Tremont's right to discharge Vasu, other than the non-viable claim that the Letter contained one, there are no allegations that Vasu detrimentally relied on such a promise. Accordingly, there are not sufficient allegations of detrimental reliance to support such a theory.[5] *Weiner,* 57 N.Y.2d at 467, 457 N.Y.S.2d 193, 443 N.E.2d 441 (determination based not on any single act, phrase or other expression, but the totality of the situation, including the writings, negotiations and intentions of the parties; rejecting alternative offers of employment not enough); *Rizzo v. International Brotherhood of Teamsters, Local 237,* 109 A.D.2d 639, 642, 486 N.Y.S.2d 220 (1985) (no knowledge of employee manual, therefore no reliance); *Rooney,* 91 N.Y.2d at 704, 674 N.Y.S.2d 616, 697 N.E.2d 571 (dissenting opinion) (factors significant to claim of breach of employment contract for indefinite duration important and the absence of such pleading may be fatal to such a claim); *Wright,* 817 F.2d at 1005 (phrase in letter and in early interview— may be dismissed at "the pleasure of the supervisor for the first two years" of plaintiff's employment— not enough to bring within *Weiner's* exception as matter of law); *Wanamaker,* 907 F.Supp. at 540 (allegations that former employer induced plaintiff to leave prior employment based on oral assurances that "he would remain as [employer's] in-house counsel for the rest of his career" not enough to bring within "narrowly tailored *Weiner* exception").

Considering the totality of the circumstances alleged here, there are no express or implied limitations alleged that rebut the at-will presumption. For the reasons cited above, the language in the Letter, whether it is an employment contract or not, does not establish any promise of employment for two years or any limitation on Tremont's right to discharge Vasu at will. Nor do the alleged oral representations, assurances, instructions, directions and supervision, by themselves or in conjunction with the Letter, adequately establish an express or implied limitation on Tremont's "otherwise unfettered ability to discharge" Vasu. *Cucchi v. New York City Off–Track Betting Corp.,* 818 F.Supp. 647, 652 (S.D.N.Y.1993) (citing cases holding that oral assurances that induce an individual to work for the employer are not by themselves sufficient evidence of an express agreement to alter the employee's at-will status). Construing the allegations favorably, and drawing all inferences in favor of Vasu, the totality of the alleged circumstances do not give rise to an express or implied limitation of Tremont's right to discharge Vasu at will.

To the extent that Vasu intended to allege wrongful discharge in the first three counts, that argument fails as well. *Sabetay,* 506 N.E.2d at 922, *citing Murphy,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (New York courts do not recognize a common law tort theory of wrongful or abusive discharge of an at-will employee). For the preceding reasons, Tremont's motion to dismiss Counts I, II and III is granted.

### 2. *Count IV*

▇▇▇ This count fails to state a claim for promissory estoppel. "In New York, promissory estoppel may apply where there is 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reli-

---

5. Even if the court construed the complaint broadly to allow the allegations of detrimental reliance in Count IV to serve as allegations under Counts II and III, those allegations are conclusory and do not rise to the level of specificity required by *Weiner.*

ance.'" *Totalplan Corporation of America v. Colborne*, 14 F.3d 824, 833 (2d Cir. 1994) (quoting *Esquire Radio & Electronics Inc. v. Montgomery Ward & Co. Inc.*, 804 F.2d 787, 793 (2d Cir.1986) (internal quotations and citation omitted)).

Vasu alleges, in general and conclusory terms, that Tremont made representations and assurances to Vasu "regarding the adequacy of his performance as an employee" before Vasu's termination. Compl. at ¶ 22. Vasu further alleges, in general and conclusory terms, that Tremont provided instructions, directions and supervision to Vasu "in the performance of his duties as an employee" before Vasu's termination. Compl. at ¶ 23. Those allegations alone are inadequate to show a "clear and unambiguous" promise by Tremont to employ Vasu for a two-year term, and so are insufficient to support a claim for promissory estoppel. *Keough v. Texaco Inc.*, 1999 WL 61836 at *9 (S.D.N.Y.1999) ("vague assurances do not suffice").

Vasu alleges that those representations, assurances, instructions, directions and supervision *"together with* the Employment Agreement ... constituted a promise by Tremont to continue to employ Vasu on similar terms and conditions" for two years. That theory fails as well. Compl. at ¶ 24 (emphasis added). The court earlier concluded that the Letter did not contain an ascertainable term of duration. An allegation of an oral agreement to employ Vasu on terms similar to those in the Letter, therefore, adds nothing and cannot change Vasu's at-will status.

 In addition, Vasu's conclusory claim of detrimental reliance, unsupported by any factual allegations of actual reliance, is also insufficient to support a claim for promissory estoppel.[6] Count IV fails to state a claim for promissory estoppel and is, therefore, dismissed.

**3. Count V**

 Vasu's claim for violation of New York State Labor Law §§ 190, *et seq.* ("NYLL") survives this motion to dismiss. Vasu clearly alleges that Tremont owed Vasu wages and withheld them. Compl. ¶¶ 40, 41, 42, 43. The claim is partially undercut because Vasu alleges that Tremont employed him as "managing director of Tremont's offshore insurance subsidiary." Compl. at ¶ 7. New York Labor Law does not apply to employees serving in an executive, managerial or administrative capacity. NYLL §§ 190(1)(6) & 198-c (3); *Alter v. Bogoricin*, 1997 WL 691332 at *13 (S.D.N.Y.1997) (citations omitted). Although it is not clear from the Letter what Vasu's duties were, Vasu could prove a set of facts to support his claim based on the allegations of the complaint that he was, in part, a commission salesman of offshore deferred annuities and variable life insurance policies, bringing him within the statute. *See* Pl. Brief at 9; *Tuttle v. Geo McQuesten Co. Inc.*, 227 A.D.2d 754, 642 N.Y.S.2d 356, 357–58 (1996) (commission sales person is employee whose wages are protected under New York Labor Law).

 In addition, salary, vacation, benefits, commissions or bonuses earned are treated as wages under the statute. NYLL §§ 190(1) & 198-c(2); *International Paper Co. v. Suwyn*, 978 F.Supp. 506, 513 (S.D.N.Y.1997) (bonuses or commissions only wages if guaranteed or based solely on work employee actually performed); *Dean Witter Reynolds, Inc. v. Ross*, 75 A.D.2d 373, 429 N.Y.S.2d 653, 658 (1980) (incentive pay does not constitute a "wage" until it is actually earned and vested); *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 264–65 (2d Cir.1999) (pay guaranteed under bonus formula and not left to employer's discretion constitutes

---

**6.** Even if the court generously construed Vasu's complaint to allege that he had changed residences or jobs to accept employment with Tremont, that would not be sufficient reliance. *Keough,* 1999 WL 61836 at *9

(quoting *Cunnison,* 485 N.Y.S.2d at 275 ) ("it has been consistently held that a change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine") (citations omitted).

wages). Accordingly, this claim survives because, at a minimum, the salary, vacation and benefits earned during the period during which Vasu was employed constitute "wages" allegedly withheld by Tremont.

Moreover, although the stock options in the Letter are not wages, *IBM Corp. v. Martson,* 37 F.Supp.2d 613, 617 (S.D.N.Y. 1999) (stock options guaranteed in addition to salary and for the purpose of retaining employee not wages), it is a question of fact whether the minimum bonus guarantee and the objective incentive bonus alleged in the Letter constitute wages under New York Labor Law §§ 190, *et seq. International Paper Co.,* 978 F.Supp. at 513 (bonus not wages where not based on employee's own performance and not guaranteed as term of employment); *Truelove v. Northeast Capital & Advisory Inc.,* 268 A.D.2d 648, 702 N.Y.S.2d 147, *leave to appeal granted,* 94 N.Y.2d 764, 708 N.Y.S.2d 52, 729 N.E.2d 709 (2000) (definition of wages is based on whether compensation is vested and mandatory as opposed to discretionary and forfeitable). Therefore, Tremont's motion to dismiss is denied with respect to Count V.

#### 4. *Count VI*

■ Count VI also survives this motion to dismiss. Vasu has sufficiently pleaded facts that Tremont fired him to avoid paying him commissions owed, thereby placing him within the very narrow exception under which an at-will employee can recover for breach of covenant of good faith and fair dealing under New York law. *Wakefield v. Northern Telecom, Inc.,* 769 F.2d 109, 111–12 (2d Cir.1985); *Knudsen v. Quebecor Printing (USA) Inc.,* 792 F.Supp. 234, 237–38, 240 (S.D.N.Y.1992) (*Wakefield* still good authority in the context of employment sales commissions); *see also Haffner v. Bryan Cave LLP,* 2000 WL 1159289 at *3 (S.D.N.Y.2000). As in *Wakefield,* a provision in the Letter can be construed to limit Vasu's rights to recover earned commissions if Vasu was not employed at the time the commissions were paid. Construed favorably to Vasu, the complaint can be read to allege that avoiding payment of Vasu's earned commissions was a substantial motivating factor in Tremont's decision to terminate Vasu. Compl. at ¶¶ 46–48. Therefore, Tremont's motion to dismiss Count VI is denied.

#### 5. *Count VII*

■ Vasu argues that Count VII is a claim for intentional interference with Vasu's prospective economic advantage under the theory of prima facie tort. Pl. Brief at 11. Count VII, however, pleads wrongful discharge. Moreover, the fact that Count VII does not allege that the discharge was without economic or social justification, a required element of prima facie tort, counsels against reading this count as claiming prima facie tort. *Murphy,* 58 N.Y.2d at 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (citations omitted).

Vasu cannot circumvent the prohibition of a tort claim for wrongful discharge or the contract rule for discharge of an at-will employee by alleging prima facie tort. *Ingle v. Glamore Motor Sales, Inc.,* 73 N.Y.2d 183, 188–89, 538 N.Y.S.2d 771, 535 N.E.2d 1311 (1989) ("In holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as prima facie tort … to bootstrap the threshold deficiency in a wrongful discharge claim"); *Murphy,* 58 N.Y.2d at 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (prima facie tort "cannot be allowed in circumvention of the unavailability of a tort claim for wrongful discharge or the contract rule against liability for discharge of an employee"); *Silver v. NL Industries Inc.,* 1985 WL 241 at *4 (S.D.N.Y.1985), (*citing Belsky v. Lowenthal,* 62 A.D.2d 319, 405 N.Y.S.2d 62, 65 (1978), *aff'd on opinion below,* 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979)) (prima facie tort may only be based on behavior that is not classified as any other tort); *see also Leibowitz v. Bank Leumi Trust Co. of New York,* 152 A.D.2d 169, 548 N.Y.S.2d 513, 521 (1989) (recasting basic wrongful discharge claim as

"harassment". or "emotional infliction of emotional distress" claims also fails). Therefore, Count VII fails to state a claim and is dismissed.

### 6. *Count VIII*

██ Vasu's allegations are sufficient to state a claim for unjust enrichment. *See Wolf v. National Council of Young Israel,* 264 A.D.2d 416, 694 N.Y.S.2d 424, 426 (1999) ("The essence of unjust enrichment is that one party has received money or a benefit at the expense of another.") (internal citations omitted). Vasu alleges that Tremont retained "compensation due and owing to Mr. Vasu pursuant to the Employment Agreement and /or the Implied Employment Terms." Compl. ¶ 57. Nowhere does Vasu concede that Tremont paid him his full earnings up to the date of termination.

The complaint, therefore, along with the Letter, can be construed to allege that Tremont retained salary, guaranteed bonus, objective incentive bonus, vacation pay and benefits that Vasu earned while employed. *See International Paper Co.,* 978 F.Supp. at 513 (to prevail on a claim for unjust enrichment, the claimant must have a reasonable expectancy of receiving compensation); *Furman v. Watchman,* 229 A.D.2d 358, 645 N.Y.S.2d 788, 789 (1996) (unjust enrichment claim improperly dismissed when employee alleged entitlement to commissions and it was unclear whether parties had entered agreement entitling plaintiff to earn commissions in addition to salary and other benefits for administrative duties).

Accordingly, Tremont's motion to dismiss Count VIII is denied.

## III. CONCLUSION

Tremont's motion to dismiss (Doc. # 25) is granted as to Counts I, II, III, IV & VII and denied as to Counts V, VI & VIII.

It is so ordered.